UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES E. LAKATOS et al.,

    Plaintiffs,

v.                                CASE NO. 8:25-cv-03525-SDM-LSG

CORNERSTONE SECURITIES,
LLC, et al.,

    Defendants.
_____/

### **ORDER**

Alleging seven claims arising from the defendants' investment advisory service, James and Gail Lakatos, John and Kathleen Bailey, Lisa Gates, and Kathleen White sue (Doc. 22) Cornerstone Securities, LLC, an investment advisory firm and Russell Fieger, Cornerstone's Chief Executive Officer and Chief Compliance Officer. The defendants move (Doc. 34) to dismiss, and the plaintiffs respond (Doc. 37) in opposition.

### **BACKGROUND**

Between 2018 and 2021, at dinners sponsored by Cornerstone, retirees James Lakatos (now seventy-eight and legally blind), Gail Lakatos (seventy-one), Lisa Gates (seventy-two), John Bailey (sixty-three), Kathleen Bailey (sixty-four), and Kathleen White (seventy-two) met non-party Christopher Burch, Cornerstone's registered investment advisor, who, on Cornerstone's behalf, "marketed his services as high-level financial advice for retirees" and as "risk-mitigation oriented." (Doc. 22

¶¶ 9–12, 26, 29, 68) Each plaintiff later opened an individual retirement account (IRA) that Burch managed for Cornerstone, which charged the plaintiffs thousands of dollars in advisory fees. (Doc. 22 ¶¶ 30–31)

Between 2021 and 2022, despite the known risks, Burch invested "a substantial portion" of the plaintiffs' IRAs (and in some instances nearly all) in POAI, a volatile "penny stock" issued by Predictive Oncology, Inc. (POI),[1] a medical artificial-intelligence company that went public in 2021.[2] (Doc. 22 ¶¶ 33–35, 40, 42, 48–49, 52–53, 55) Two events diluted the plaintiffs' positions in POAI: (1) on April 23, 2023, POI effected a 20-for-1 reverse stock split to cure POI's stock's having traded below $1.00 for thirty consecutive trading days in violation of Nasdaq's minimum-price requirement[3] and (2) in September 2025 POI effected a 1-for-15 reverse stock split to cure a renewed violation of the same requirement. (Doc. 22 ¶¶ 56–57)

To recoup losses from their IRAs, the plaintiffs sue each defendant for negligence, breach of fiduciary duty, violation of the Florida Securities and Investor Protection Act, violation of the Florida Deceptive and Unfair Trade Practices Act, and

---

[1] Now operating as Axe Compute, Inc. (Doc. 22 ¶ 61)

[2] POI's June 14, 2021 offering prospectus acknowledges that investment in POAI involved a high degree of risk, that investors would suffer dilution, that POI likely would undertake additional dilutive equity offerings, and that POAI common stock had exhibited substantial volatility. (Doc. 22-8 at 3, 9) POI's November 5, 2021 Form 10-Q acknowledges that POI has "incurred a net loss in each of [POI's] annual periods since [POI's] inception" and that POI has funded operations through the sale of common stock. (Doc. 22-9 at 35)

[3] POI had effected an earlier reverse stock split in 2019, before Burch invested the plaintiffs' money in POAI. (Doc. 22 ¶ 58) POI acknowledged that another violation of Nasdaq's minimum-price requirement could result in delisting and that, if delisted and unable to maintain a listing on an alternate exchange, the liquidity of POAI stock likely would suffer significant impairment. (Doc. 22 ¶ 56)

"vicarious liability." The plaintiffs sue Cornerstone for breach of contract. James Lakatos, Gail Lakatos, and Kathleen White sue each defendant for violation of the Florida Securities and Investor Protection Act and the Florida Adult Protective Services Act.

## DISCUSSION

### The Complaint Fails to Pierce the Corporate Veil as to Feiger

A "general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). Florida law will "disregard the corporate entity in only the most extraordinary cases," and those who wish to disregard corporateness "carry a heavy burden." *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla.), affd, 176 B.R. 223 (M.D. Fla. 1994). A plaintiff must establish (1) that the shareholder so dominated the corporation that the corporation had no independent existence, (2) that the corporate form was used fraudulently or for an improper purpose, (3) and that the improper use caused the plaintiff's injury. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984). The "law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil," and the "mere fact that [a person] is a stockholder and officer" of the corporation "does not, without more, create personal liability." *Gasparini*, 972 So. 2d at 1055. A contrary rule "would completely destroy the corporate entity as a method of doing business and . . . ignore the historical

- 3 -

justification for the corporate enterprise system." *Dania*, 450 So. 2d at 1120 (quoting

*Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 24 (Fla. 1955)).

The plaintiffs' allegations fail to carry this heavy burden. Fieger appears in six

of the seven claims, but the complaint describes Fieger's role in the disputed transac-

tion in vague, generic, and conclusory terms:

> Throughout the relevant period, Defendant Fieger was also an investment adviser due to his ownership, management, or control of Defendant Cornerstone.
>
> [T]hroughout the relevant period, Defendant Fieger was a person who, for compensation, either directly or through his ownership or control of Defendant Cornerstone, engaged in the business of advising others on the sale and purchase of securities and management of investment portfolios.
>
> On information and belief, during the relevant period, Defendant Fieger was the founder, CEO, and CCO of Defendant Cornerstone. Fieger was, therefore, in charge of supervising the operations of his registered representatives and agents. As Defendant Cornerstone's CCO, Defendant Fieger was also charged with implementing adequate compliance procedures in connection with the firm's management of its clients' assets.
>
> As a registered investment adviser, Fieger knew that he had a fiduciary duty to act in the best interests of his clients.
>
> Despite that fiduciary duty, Fieger knowingly, or recklessly, failed to supervise the operations of Burch, causing substantial damage to Plaintiffs.

(Doc. 22 ¶¶ 25, 63–66) Across fifty paragraphs of "factual allegations," the

plaintiffs offer only a single concrete, specific, and individualized allegation

against Fieger:

> On or about April 1, 2024, Ms. White contacted Defendant Fieger about the losses on her account with Defendant Cornerstone and the sudden departure by Burch, but Defendant Fieger denied any supervisory responsibility

except for the review of "any PowerPoint presentation for accuracy."

(Doc. 22 ¶ 44)

Every allegation against Fieger concerns duties as a director and officer of Cornerstone, and none supplies a basis for personal liability. To avoid that conclusion, the plaintiffs argue that Fieger is liable as Burch's principal. But Burch was an agent of Cornerstone, not of Fieger, so any vicarious liability for Burch's conduct runs to Cornerstone. And at any rate, to shift corporate liability to Fieger on a "principal" theory is veil-piercing by another name and fails for the same reason. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000) ("[T]he mere ownership of a corporation by a handful of shareholders is an insufficient reason to pierce the corporate veil and hold shareholders individually liable for a corporate employee's errors.").

Finally, the plaintiffs contend that Fieger, as the alleged "control person," is liable under Section 517.211(3), Florida Statutes, for the violation of Section 517.211(1) by the "controlled person," Burch. But Section 517.211(3) became effective October 1, 2024. See ch. 2024-168, § 15, Laws of Fla. Before that date, Chapter 517 imposed no control-person liability in a private action. Because the conduct alleged in the complaint predates the effective date and because nothing in the statute evinces a legislative intent to apply Section 517.211(3) retroactively, the subsection imposes no liability on Fieger. *See Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 877 (Fla. 2010) (declining

- 5 -

to apply a substantive statutory amendment retroactively absent a clear legislative statement).

### The Securities Transaction Exemption to the FDUTPA Does Not Apply

The defendants argue that the plaintiffs cannot state an FDUTPA claim because courts exclude "securities transactions" from FDUTPA's reach. *See, e.g., Rogers v. Nacchio*, 2006 U.S. Dist. LEXIS 101855, at *45 (S.D. Fla. June 6, 2006). But the FDUTPA claim arises not from a securities transaction but from the defendants' fiduciary duties as investment advisers. And the defendants cite no authority characterizing such an advisory relationship as a securities transaction within the exclusion they invoke.

### Section 517.34, Florida Statutes, Does Not Provide a Claim for Relief

The plaintiffs concede that Section 517.34, Florida Statutes — the provision erroneously cited in their claim under the Adult Protective Services Act — provides no claim for relief. The applicable provision is Section 415.1111, Florida Statutes.

### "Vicarious Liability" is Not a Cognizable Claim

The plaintiffs' "vicarious liability" claim alleges that "because Burch acted within the course and scope of his actual agency with Defendants at all times material to the action . . . Defendants are vicariously liable for all damages or relief awarded as a result of the tortious conduct of their respective agent and/or registered representative, Burch." (Doc. 22 ¶¶ 123, 126) Because the claim identifies neither any "conduct" nor any legal authority rendering

the conduct "tortious," the plaintiffs fail to state a "claim" for vicarious liability — which is, in any event, not a stand-alone claim but a pathway to liability under an independently cognizable claim for relief.

## CONCLUSION

The motion to dismiss is **GRANTED-IN-PART AND DENIED-IN-PART**. Counts I, II, III, IV, and VI are **DISMISSED WITHOUT PREJU-DICE** as to Fieger only. Counts V and VII are **DISMISSED WITHOUT PREJUDICE** as to all defendants. No later than **JULY 30, 2026**, the plaintiffs may amend the complaint.

**ORDERED** in Tampa, Florida, on July 9, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE